UNITED STATES DISTRICT COURT
District of South Carolina
Columbia Division

THE UNITED STATES OF AMERICA

Vs.

BRETT SHANNON JOHNSON

Case Number: 3:06 – 1129
Declaration of Brett Shannon Johnson RE:
Statement of Mitigation
Prepared for Sentencing

I, Brett Shannon Johnson, declare as follows:

I
**Statement of Facts**

Defendant, Brett Shannon Johnson, referred to herein as "Johnson", was arrested by South Carolina Law Enforcement Officials on or about February 8, 2005 in Charleston, South Carolina on state charges of Computer Crime, Forgery, and Obtaining Goods Under False Pretense.

Because of Johnson's unique knowledge and experience among certain large-scale online criminal internet groups, The United States Secret Service, referred to herein as "USSS", contacted Johnson with an offer to assist the law enforcement agency in their investigations and educate USSS members concerning all aspects, techniques, etc. of these online criminal enterprises. Johnson was informed by various members of the USSS that his work would result in his state charges being "worked off". Johnson agreed.

As a result, and after 90 days incarceration at the Charleston County Detention Center, Johnson's state bond was lowered to $10,000. The lowered bond came without condition.

Johnson posted bond through a bonding company and was released. Approximately 30 days later Johnson began work for the USSS. Johnson was advised before starting work that the job would not last more three months. Johnson moved to Columbia, South Carolina.

USSS paid Johnson a per diem rate OF $50 and also agreed to pay Johnson's rent and electricity bills.

Johnson worked 10 months for the USSS providing invaluable assistance and insight into the online criminal activities; his work resulted in several indictments, continuing investigations, and irreparable damage to several major online criminal enterprises.

3 months into Johnson's USSS employment, the USSS computer Johnson was using was compromised, "hacked", by a member of the online criminal enterprises Johnson had been enlisted to help investigate. This was through an error on the part of the USSS. As a result all of Johnson's personal information, and those of his fiancé were published publicly online across the internet and on all major criminal internet group websites. Initially, members of the USSS accused Johnson of orchestrating the USSS breach in an attempt to terminate his employment with the USSS. It was later determined that Johnson had nothing to do with the compromise.

( Despite Johnson's personal information being publicly disseminated and being labeled a "snitch" and "confidential informant" within these groups, usually a career ending and life threatening gesture among criminal groups, Johnson was such an invaluable asset that his work continued an additional 7 months.)

Fearing for Johnson's safety and citing a very real possibility that one of these online criminals was likely to attempt to kill Johnson or his fiancé, since his home address had been published, USSS advised and forced Johnson to relocate. Johnson did so.

While quickly determining that Johnson had no part in the USSS computer breach, members of the USSS already harassing Johnson, from that point on ramped up their harassment concerning Johnson and his fiancé, calling her a "slut", "whore", and "harlot" among other derogatory names, and commenting such things as "How much does Elizabeth charge for a blow-job?" Unable to defend himself or his fiancé against the comments and assaults of these individuals for fear of being sent back to jail- and being told as much by USSS members – and Johnson's fear for the safety of Elizabeth Sadler; Johnson ended his relationship with his fiancé and moved her back to Charleston, South Carolina.

Devastated, depressed, and suicidal, Johnson an alcohol and cocaine addict since ~~2000~~ 353 and already using cocaine, relapsed hopelessly back into his addictions worse than ever in his life- as a direct result of these circumstances.

Feeling hopeless and to feed Johnson's increasing need for cocaine and cash, Johnson was submitting fraudulent tax returns in the names of deceased individuals and collecting the funds.

Defendant Johnson slid further into his world of drugs and alcohol, becoming increasingly depressed and suicidal because of the events of his life and because of the actions mentioned previously of the USSS. The USSS further compounded the problem by depriving Johnson of many of his basic civil liberties and rights throughout his USSS employment.

On or about March 26, 2006, Johnson had his state bond improperly revoked after Johnson divulged following a polygraph, that he had been in contact with a New York Times Reporter regarding a book offer and possible future employment opportunities after leaving the USSS. The deal was for nothing to be published until the investigations were over.

As a result, Special Agent Neal Dolan of the Columbia USSS Field Office contacted Johnson's bail bondsman and informed him that he wanted Johnson's bond revoked. Bond was revoked without any additional charges filed at that time. Johnson's bail bondsman informed Johnson that he was revoking bond because the USSS had requested such and the bondsman wasn't comfortable doing so and didn't wish to do so, but felt obligated to comply.

On or about March 29, 2006, Johnson was visited while incarcerated at the Charleston County Detention Center by USSS Special Agent Bobby Joe Kirby, herein referred to as "Kirby", and Special Agent Jim Rammicone, herein referred to as "Rammicone", of the Columbia Field Office. Johnson was told by Kirby that they wished to ask him questions concerning items found in Johnson's apartment following a search after Johnson's bond revocation. Rammicone, before questioning began and before Johnson was advised of his Miranda Rights, threatened Johnson by informing Johnson that (Johnson) was going to tell (them) everything (he) had done over the past 6 years, or (Rammicone was) going to make it ( his) mission in life to fuck over (Johnson) and

(his) family. Rammicone further stated that he wasn't just speaking about existing and future charges, but was intent on "hounding" Johnson after his release to make Johnson and his family's life "hell". Rammicone then gestured to a Miranda Rights Waiver and asked Johnson if he wished to talk. Johnson's response was "I don't want to talk to you". Agent Rammicone immediately got up to leave and as he and Agent Kirby exited, Rammicone told Johnson "Fuck you very much".

Approximately 3 weeks after being threatened by the USSS, Johnson's bond was reinstated. Johnson bonded out again.

Johnson could have fled at any point during his 10 month employment with the USSS. He did not. Even at this point he did not initially plan on fleeing. After much deliberation and fearing for the future welfare of himself and his family due to threats from the Usss, Johnson decided to flee.

Feeling hopeless, depressed, and lost-Johnson also resumed heavy cocaine and alcohol use.

## II
## Substantial Assistance

On September 16, 2006, members of the USSS effectuated the arrest of Johnson in Orlando, Florida, Alleging violations of USC section 1803. Specifically- Aggravated Identity Theft, Wire Fraud, Access Device Fraud, and Misuse of Social Security Numbers.

Johnson willingly disgorged property and funds equal to or in excess of $230,000.
USSS confiscated the following items, including but not limited to:
   A) Over $150,000 cash
   B) 2000 Jeep Cherokee valued over $9000
   C) Furniture and electronics valued in excess of $55,000
   D) DVD collection valued in excess of $22,000

Further, Johnson provided substantial assistance to Law Enforcement.
   A) Johnson provided invaluable training, and insight to members of the USSS enabling them to start new investigations and infiltrate online criminal groups that would have been impossible without Johnson's help.
   B) Johnson's assistance was responsible for stopping in excess of $3.0 million in fraud. This would have been impossible without Johnson
   C) Johnson consulted with and assisted USSS operations across the country, including operations in Atlanta, Georgia; Rochester, New York; Nashville, Tennessee and others.
   D) Johnson consulted with members of the Atlanta, GA. USSS on how to properly set up and run an undercover online investigation for maximum benefit and how to avoid detection by criminal elements.
   E) Johnson provided insight, suggestions, and invaluable knowledge to companies such as Bank of America and upper echelon USSS and their associates such as, but not limited to Jake Jacobs and Tom Villancizvo.

F) Johnson's substantial assistance resulted in the indictments of over 8 individuals across the country and Canada

G) Because of Johnson's work a number of individuals across the globe are currently being investigated with more arrests to follow.

H) Of these already indicted, some have now become USSS confidential informants, with likely more to follow. The information and arrests these individuals yield are a direct result of Johnson's substantial assistance to the USSS.

I) Johnson educated numerous members of different law enforcement agencies on all aspects of online fraud. Because of the invaluable information Johnson departed to law enforcement, law enforcement is now better equipped to handle, investigate, and circumvent online crime in countless areas for the foreseeable future.

J) Johnson's work and efforts with law enforcement has left several major online criminal organizations in such a state of disrepair and damage that they no longr operate at the level they did prior to Johnson's involvement. Several of these organizations were decimated because of Johnson's work.

K) Johnson's Substantial Assistance to law enforcement continues to be felt among these online criminal enterprises and will continue to do so well into the future.

### III
### Substance Abuse and Rehabilitation / Mental State

Defendant Johnson has been a cocaine addict since approximately 2000. Mr. Johnson is also a daily user of marijuana.

A) Cocaine addiction has been a problem in Mr Johnson's life for well over 5 years leading up to his September 16, 2006 arrest. Mr. Johnson was using in excess of 3.5 grams of cocaine daily. As a result, Mr. Johnson's behavior and decision making processes were greatly impaired.

B) Further, Johnson associates his drug addiction to the very online criminal organizations the USSS recruited Johnson to work on and within. MR. Johnson's reintroduction to these online criminal organizations was much the equivalent of taking an unrehabilitated crack or heroin addict and placing him in a drug environment, telling him not to use drugs and to assist law enforcement. Mr. Johnson was once again around the people, places and things he associated with his addiction. Thus it became easier for Johnson to succumb to his drug addiction once again and his breaking the law to feed that addiction. Mr. Johnson's reintroduction to these criminal groups and their environments helped pushed him into his past abuses and enforced his failures as a man and human being.

C) Further, Johnson, at the time, was in a state of mental depression with feelings of hopelessness and despair. Johnson sustained a number of psychological factors resulting in his depression, drug abuse, and poor judgement. These include:

   a. Johnson's wife left him after 9 years of marriage in December 2003. This prompted Johnson to seek professional help in Mount Pleasant, South Carolina.

b. Johnson's subsequent meeting and falling in love with Elizabeth Sadler, only to later discover her to be a cocaine addict herself.
c. Johnson's discovery shortly thereafter that Elizabeth was prostituting herself in order to feed her addiction.
d. Johnson's feelings that he needed to do whatever was necessary to fix Elizabeth's addictions- even as Johnson, himself, was addicted ( which amounted to spending vast sums of money and getting money however he could).
e. Johnson's arrest on state charges 3 weeks before his scheduled marriage to Elizabeth.
f. Johnson's becoming a USSS confidential informant and coping with the guilt associated with being a "snitch".
g. Johnson constantly being verbally and mentally harassed by USSS members.
h. The compromise of Johnson's USSS computer. The initial accusations leveled at him for it. The publishing of both Johnson's and Elizabeth's personal details and information, and the subsequent fear for Mr. Johnson's life-causing him to relocate.
i. The USSS assaults on Johnson by openly and frequently calling Elizabeth a "slut", "whore", and "harlot", and also asking Johnson such questions as "how much does Elizabeth charge for a blow-job?"
j. Johnson's increased anxiety and guilt over his own drug use.
k. The deprivation and systematic removal of many of Johnson's basic civil liberties and rights by the USSS.
l. Johnson's only sister and closest relative disowning him because of his current circumstances.
m. Johnson's break up with his fiancé Elizabeth over fears for her safety and the verbal abuse of the USSS.
n. Johnson's continued guilt over his being a CI, over his drug addictions, and over the way he went about acquiring money to support his drug habit and need for cash.
o. Johnson's improper bond revocation and the subsequent threats made by the USSS against Mr. Johnson and his family.
p. Mr. Johnson's feelings that he was being forced to go on the run and avoid prosecution out of fear for the welfare of he and his family.
q. Mr. Johnson's feelings of abandonment, hopelessness, and being completely lost at being forced to leave his family and home over said USSS threats.

Coupled with Johnson's addiction, the above series of circumstances helped contribute to Johnson's poor judgment and unwise choice of actions.

Defendant Johnson recognizes his desperate need for rehabilitation and help. He has actively been seeking such. It is Mr. Johnson's sincere wish that the court will recognize his need and order appropriate action.

## Conclusion

Johnson's addictions and mental problems, coupled with a tragic set of circumstances led him to exercise poor judgment which resulted in his unlawful activities. These activities were exacerbated by actions and threats from the USSS against Mr. Johnson and his family. Mr. Johnson was subjected to substantial abuse and harassment and deprived of the Civil Liberties and rights guaranteed to all Americans.

Johnson realizes his mistakes and wishes the opportunity to make amends. He is sorry for his actions and wishes to apologize to those he has hurt and brought anguish to. Johnson also wishes to apologize to this court.

What Johnson needs is rehabilitation, not incarceration. He would like to get on with his life, receive the help he needs, and be a productive, valuable citizen. Johnson wishes nothing more than to be a good man and to have a family. He wishes to start a family before it is too late. He believes everyone deserves a second chance and prays he be given one. Johnson asks that this court allow him the ability to redeem himself and have a family.

Wherefore the defendant prays that, if additional custody time is contemplated, that the execution of said custody time be stayed, that the defendant be given credit for time served. As evidence of the defendant's remorse, defendant would be amendable to whatever fines or restitution this court might deem appropriate.

I declare, under penalty of perjury, pursuant to the laws of the United States of America and South Carolina, that the foregoing is true and correct.

Executed _April 6, 2007_ at _LCDC, Lexington, South Carolina_

Respectfully Submitted

_[signature]_

Brett Shannon Johnson

Witness: _[signature]_
June 5th 2013